1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| CHARLOTTE YVETTE BILBREW, | 1:09-cv-02238-JLT HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1) |
| v. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |
| MARY LATTIMORE, Warden, | |
| Respondent. | ORDER DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  On April 9, 2010, Petitioner filed her written consent to the jurisdiction of the United States Magistrate Judge for all purposes.  (Doc. 10).  On March 29, 2010, Respondent filed her written consent to the jurisdiction of the United States Magistrate Judge for all purposes.  (Doc. 8).

## **PROCEDURAL HISTORY**

Petitioner is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is serving an determinate sentence of nine years pursuant to a judgment of the Superior Court of California, County of Tulare (the "Superior Court").  The sentence resulted from her May 15, 2008, conviction for assault with a deadly weapon with a "strike" prior and a prior serious felony conviction.  (Cal. Pen. Code 245(a)(1), 667(b)-(I), 1170.12(a)-(d), 667(a)(1).  (Lodged Document ("LD") 1, p. 3).  Petitioner appealed her conviction to the California Court of Appeal,

1   Fifth Appellate District ("5th DCA"), which affirmed her conviction and sentence in an unpublished

2   opinion issued on August 20, 2009. (LD 1). Petitioner's Petition for Review in the California

3   Supreme Court was denied without comment on October 28, 2009. (LD 2). Respondent concedes

4   that the petition is timely and that the claims in the instant petition are exhausted. (Doc. 11, p. 5).

5                                    **FACTUAL BACKGROUND**

6          The Court hereby adopts the Statement of Facts contained in the 5th DCA's unpublished

7   opinion, as follows:

8          On Thanksgiving Eve, November 21, 2007, J. Battle resided with his girlfriend, the
           appellant, in an apartment on Laurel Street in Visalia. Appellant's daughter rented the
9          apartment and lived there with Battle, appellant, appellant's sister, and appellant's
           grandchildren. Battle and appellant shared a bedroom in the apartment and Battle
10         kept his possessions in bags. Battle said he and appellant had a four-year relationship
           during which they lived separately. He also said he moved his "stuff" from Fresno to
11         Visalia about two months before Thanksgiving Eve 2007.

12         Battle said he finished work at 5:00 p.m. and went to the apartment, where appellant
           was preparing food for Thanksgiving Day. He left the apartment and returned with a
13         beer, which he drank. Battle said he spent the next eight hours departing from and
           returning to the apartment and drinking about 15 alcoholic drinks. Each time Battle
14         returned to the apartment, he was more intoxicated than the time before and he and
           appellant would argue. Battle returned to the apartment for the last time between 1:30
15         and 2:30 a.m.

16         During his return visits to the apartment, appellant told Battle he had a curfew and
           also said she wanted him to stay home. At some point in the evening, Battle
17         suggested he was going to leave his relationship with appellant. According to Battle,
           this occurred during an argument in which appellant may have been "talking crap"
18         which "hit him" when he was in an intoxicated state. Battle maintained she did
           nothing to provoke him that evening, although she might have asked him to leave the
19         premises.

20         Battle returned to the apartment between 1:30 and 2:30 a.m. He was drunk, cursed,
           and acted in a belligerent manner, and awakened everyone in the household, including
21         the children. Battle said appellant opened the door but he claimed he might have
           forced his way into the apartment. Appellant wanted Battle to stay in the bedroom
22         and go to bed. Appellant tried to close the bedroom door but he kept opening it
           because he did not want to stop arguing or go to bed. Battle said he was fired up from
23         the alcohol he consumed and was "raising hell."

24         Appellant left the bedroom and went to the kitchen. Battle followed a few seconds
           later. He cussed, ranted, and raved as he followed her. En route to the kitchen, Battle
25         heard a drawer open. He quickly went around a corner and entered the kitchen.
           Battle said appellant turned around and was "right there" as he entered the room. He
26         walked into a knife that penetrated his chest. Battle could not remember if appellant
           was simply holding the knife or was swinging the knife prior to penetration.

27
           On the evening of the incident, Battle told police the wound was an accident. He did
28         not remember telling the police he knew that appellant was getting a knife. The knife

pierced Battle's jacket and shirt and the prosecution introduced the weapon, jacket, and shirt into evidence. The wound was located in the center of his chest. While Battle was in the apartment, he applied pressure to the wound. He then waited outside the apartment for an ambulance to arrive. Battle was admitted to Kaweah Delta Hospital at 2:00 a.m. on Thanksgiving day. Hospital personnel applied gauze and the wound stopped bleeding after a time without the need for stitches. Battle said he left the hospital against medical advice but returned on Friday because the wound started to ooze. He stayed at the hospital until 3:00 p.m. on Friday but did not feel any pain.

Battle said his argument with appellant on November 22 was typical of his verbal conflicts with appellant. However, Battle said November 22 was the first time in months that he had consumed alcohol. In previous times, appellant would ask him to leave the apartment but she would ask him to come back once he cooled off. On the previous occasions, they had engaged in pushing and shoving. On one occasion, Battle threw beer in appellant's face. On five other occasions, Battle hit appellant. Battle said that appellant hit him about the same number of times on prior occasions. Willie Butler saw Battle throw a couple of beers in appellant's face on one occasion and appellant responded by slapping Battle's face. Battle said appellant had talked about a time in the past when she used a knife, but Battle thought she was simply bluffing.

Visalia Police Officer Dirk Alfano interviewed Battle at 1:50 a.m. on November 22. Battle told Alfano that his girlfriend stabbed him. Battle did not say that he walked into a knife held by his girlfriend. Rather, Battle said he knew appellant was getting a knife and that he walked into the knife. Battle said his statements varied because he was scared. Battle said he did not want appellant to go to jail and that she did not deserve to go to jail because the incident was his fault. Battle told Officer Alfano he had time to think about the incident and did not want appellant to go to jail. Battle said he was intoxicated when he gave both statements.

Appellant's daughter, Shonta Carrington, testified that Battle awakened her when he arrived at the apartment and banged on the front door. Appellant opened the door in response to Battle's banging. Carrington later opened her bedroom door and heard Battle loudly say that he had been stabbed, it was an accident, and "she didn't mean to–I ran into it." Carrington saw her mother pick a knife from the floor and place it on the counter behind a dish rack. Appellant's son, Deshon Carrington, lived in the apartment below appellant's apartment. He confirmed that Battle was intoxicated on the evening in question, that he returned to the apartment three times to speak with appellant, and that appellant refused to do so because Battle was drunk.

Visalia Police Officer Robert Gilson interviewed appellant and she said Battle bothered her, harassed her, and would not shut up. Appellant said she acted in self-defense because Battle was "getting crazy" with her. Gilson did not ask follow-up questions to determine the basis of her belief in self-defense or the nature of Battle's "crazy" conduct. Before tape-recording an interview with appellant, Gilson spoke with her for five to 10 minutes and then recorded an interview in which he summarized her statements. The jury watched the recorded portion of the interview with the aid of a transcript that was not admitted into evidence. In the interview, appellant said she did not know what happened. She claimed the events happened so quickly that she was unaware that she "stuck him."

Willie Butler, a longtime friend of appellant, testified he and appellant were drinking, playing around, and having a friendly argument in 1999. Butler slapped appellant hard in the face, although he was attempting to be playful. After he slapped appellant,

1   she shoved him down in a closet and stabbed him.  Butler's injuries required a few
2   days of hospitalization.  Butler said there were no other instances of violence between
    them.  The parties stipulated the 1999 assault occurred on June 1, 1999, and that
3   appellant sustained a conviction under sections 273.5, 12022, subdivision (b)(1), and
    1192.7, subdivision (c)(23) on June 13, 1999.

4   (LD 1, pp. 3-6).

5                               **DISCUSSION**

6       **I.  Jurisdiction**

7          Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

8   to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of

9   the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362,

10  375 n. 7 (2000).  Petitioner asserts that she suffered violations of her rights as guaranteed by the

11  United States Constitution.  The challenged conviction arises out of the Tulare County Superior

12  Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.

13  § 2241(d).  Accordingly, the Court has jurisdiction over this action.

14         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

15  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

16  Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries

17  v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on

18  other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed

19  after statute's enactment).  The instant proceedings were initiated by the filing of the original petition

20  on December 28, 2009, after the enactment of the AEDPA, and thus this case is governed by the

21  AEDPA.

22      **II.  Legal Standard of Review**

23         A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

24  can show that the state court's adjudication of his claim:

25       (1)  resulted in a decision that was contrary to, or involved an unreasonable application of,
    clearly established Federal law, as determined by the Supreme Court of the United States; or
26
    (2)  resulted in a decision that "was based on an unreasonable determination of
27  the facts in light of the evidence presented in the State court proceeding.

28  28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S.

1   at 412-413.

2       The first prong of federal habeas review involves the "contrary to" and "unreasonable

3   application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and mixed

4   questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410;  Davis v. Woodford, 384 F.3d

5   628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established federal law "if it

6   applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it

7   confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but

8   reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor,

9   529 U.S. at 405.  A state court decision involves an "unreasonable application" of clearly established

10  federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively

11  unreasonable manner."  Brown v. Payton, 544 U.S. at 141; Woodford v. Visciotti, 537 U.S. 19, 24-

12  25 (2002).

13      Consequently, a federal court may not grant habeas relief simply because the state court's

14  decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

15  Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  Section

16  2254(d)(1)'s reference to "clearly established Federal law" refers to "the governing legal principle or

17  principles set forth by [the Supreme Court] at the time a state court renders its decision."  Lockyer v.

18  Andrade, 538 U.S. at 64; Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005).

19      The second prong of federal habeas review involves the "unreasonable determination" clause

20  of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.

21  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under

22  § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's

23  claims "resulted in a decision that was based on an unreasonable determination of the facts in light of

24  the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. at 520; Jeffries v.

25  Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible,

26  thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").

27  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be

28  debatable among reasonable jurists."  Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.

1   2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

2           The AEDPA also requires that considerable deference be given to a state court's factual

3   findings.  "Factual determinations by state courts are presumed correct absent clear and convincing

4   evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and

5   based on a factual determination will not be overturned on factual grounds unless objectively

6   unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  Miller-

7   El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of

8   historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943,

9   976-077 (2004).

10          To determine whether habeas relief is available under § 2254(d),  the federal court looks to

11  the last reasoned state court decision as the basis of the state court's decision.  See Ylst v.

12  Nunnemaker, 501 U.S. 979, 803 (1991);  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

13  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its

14  decision, the federal habeas court conducts "an independent review of the record...to determine

15  whether the state court [was objectively unreasonable] in its application of controlling federal law."

16  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853

17  (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's

18  ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court

19  denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the

20  deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's

21  claims de novo.  Pirtle v. Morgan, 313 F.3d at 1167.

22          The prejudicial impact of any constitutional error is assessed by asking whether the error had

23  "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

24  Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding

25  that the Brecht standard applies whether or not the state court recognized the error and reviewed it

26  for harmlessness).  Some constitutional errors, however, do not require that the petitioner

27  demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v.

28  Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA

1   alleges ineffective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the

2   <u>Strickland</u> prejudice standard is applied and courts do not engage in a separate analysis applying the

3   <u>Brecht</u> standard.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  <u>Musladin v. Lamarque</u>,

4   555 F.3d 830, 835 (9th Cir. 2009).

5           **III.  Review of Petitioner's Claims.**

6           The instant petition alleges the following ground for relief:

7   **Ground One**             **Admission, pursuant to California Evidence Code Section**
                                                  **1109, of evidence of Petitioner's June 1, 1999 conviction**

8                                                   **for assault, the testimony by the victim Butler about the**
                                                  **circumstances of that case, and evidence of prior assaults**

9                                                   **by Petitioner on the victim, Battle, in this case was an**
                                                  **abuse of discretion, was unduly prejudicial, and resulted**

10                                                 **in a miscarriage of justice.**

11
12   **Ground Two**             **The evidence of prior conduct was not admissible under**
                                                  **California Evidence Code Section 1101(b) because none**

13                                                 **of the exceptions in that statute were applicable.**

14           A.  <u>Introduction Of Evidence of Prior Instance of Domestic Violence Was Not An</u>
          <u>Abuse of Discretion Under California Evidence Code Section 1109</u>.

15

16           Petitioner first contends that admission of prior conduct evidence pursuant to California

17   Evidence Code 1109 was an abuse of discretion that unduly prejudiced Petitioner's case and resulted

18   in a miscarriage of justice.  (Doc. 13, p. 4).  The Court disagrees.

19           First, as Respondent correctly argues, the United States Supreme Court has expressly left

20   open the question of whether the admission of propensity evidence violates due process.  <u>See</u>  <u>Estelle</u>

21   <u>v. McGuire</u>, 502 U.S. at 75, n. 5; <u>see</u> <u>Holgerson v. Knowles</u>, 309 F.3d 1200, 1202 (9th Cir.2002)

22   (habeas relief not warranted unless due process violation clearly established by the Supreme Court);

23   <u>Garceau v. Woodford</u>, 275 F.3d 769, 774 (9th Cir. 2001), *reversed on other grounds*, <u>Woodford v.</u>

24   <u>Garceau</u>, 538 U.S. 202 (2003)(the Supreme Court "has never expressly held that it violates due

25   process to admit other crimes evidence for the purpose of showing conduct in conformity

26   therewith....").  Hence, the state courts' rejection of Petitioner's claim *could not* have been contrary

27   to, or an unreasonable application of, clearly established United States Supreme Court authority,

28   since no such "clearly established" Supreme Court authority exists. 28 U.S.C. §  2254(d)(1).

Second, even were the foregoing not true, Ground One sounds only in state law and is therefore not cognizable in federal habeas proceedings. A federal habeas corpus court has no authority to review a state's application of its own laws, but rather must determine whether a prisoner's constitutional or other federal rights have been violated. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990). Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle, 502 U.S. at 67; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985). Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 502 U.S. at 72; Pulley v. Harris, 465 U.S. 37, 41 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991). Only if there are no permissible inferences that the jury may draw from the evidence can its admission rise to the level of a due process violation. Id. at 920. A permissible inference that the jury may draw from the evidence of prior bad acts is the defendant's intent. See, Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir. 1999).

In Ground One, Petitioner alleges only that the trial court's admission of the 1999 conviction pursuant to Cal. Evid. Code § 1109 was an abuse of discretion and therefore resulted in a "miscarriage of justice." Petitioner does not allege any specific federal constitutional violation resulting from the trial court's decision to admit the propensity evidence. Absent such specific constitutional allegations, Petitioner does not present a cognizable federal claim. Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990), *cert. denied*, 498 U.S. 1091 (1991) ("incorrect" evidentiary rulings are not the basis for federal habeas relief). Although Petitioner implies a violation of the federal constitution, her vague assertion does not transform this claim into a federal one. Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald

1  assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing);

2  see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999).

3       Finally, even assuming the claim raised a cognizable federal habeas issue, it would fail on its

4  merits.  As the 5th DCA explained, "California Evidence Code section 1109 provides that evidence of

5  a defendant's commission of prior acts of domestic violence may be used in a criminal action in

6  which the defendant is accused of an offense involving domestic violence if the evidence is not

7  unduly prejudicial." (LD 1, pp. 6-7).[1]

8       The 5th DCA's decision went on to reject Petitioner's state claim as follows:

9       The [state] appellate courts have repeatedly rejected challenges to Evidence Code
10 section 1009 on due process grounds. [Citations omitted.] These cases relied on
   People v. Falsetta, 21 Cal.4[th] 903 [(1999)], in which the [California] Supreme Court
11 concluded that a similar statute, Evidence Code section 1008, did not violate due
   process because the trial court's discretion to exclude evidence under Evidence
12 code section 352 provides a procedural safeguard against prejudice.  To the extent
   appellant is implicitly raising a due process challenge to Evidence Code section 1009,

13 _____

14     [1]Cal. Evid. Code § 1109 provides as follows: a)(1) Except as provided in subdivision (e) or (f), in a criminal action
   in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other
15 domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352.
       (2) Except as provided in subdivision (e) or (f), in a criminal action in which the defendant is accused of an offense
16 involving abuse of an elder or dependent person, evidence of the defendant's commission of other abuse of an elder or
   dependent person is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352.
17     (3) Except as provided in subdivision (e) or (f) and subject to a hearing conducted pursuant to Section 352, which
   shall include consideration of any corroboration and remoteness in time, in a criminal action in which the defendant is accused
18 of an offense involving child abuse, evidence of the defendant's commission of child abuse is not made inadmissible by
   Section 1101 if the evidence is not inadmissible pursuant to Section 352. Nothing in this paragraph prohibits or limits the
19 admission of evidence pursuant to subdivision (b) of Section 1101.
       (b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the
20 defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered,
   in compliance with the provisions of Section 1054. 7 of the Penal Code.
21     (c) This section shall not be construed to limit or preclude the admission or consideration of evidence under any
   other statute or case law.
22     (d) As used in this section:
       (1) "Abuse of an elder or dependent person" means physical or sexual abuse, neglect, financial abuse, abandonment,
23 isolation, abduction, or other treatment that results in physical harm, pain, or mental suffering, the deprivation of care by a
   caregiver, or other deprivation by a custodian or provider of goods or services that are necessary to avoid physical harm or
   mental suffering.
24     (2) "Child abuse" means an act proscribed by Section 273d of the Penal Code.
       (3) "Domestic violence" has the meaning set forth in Section 13700 of the Penal Code. Subject to a hearing
25 conducted pursuant to Section 352, which shall include consideration of any corroboration and remoteness in time, "domestic
   violence" has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years
26 before the charged offense.
       (e) Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section,
27 unless the court determines that the admission of this evidence is in the interest of justice.
       (f) Evidence of the findings and determinations of administrative agencies regulating the conduct of health facilities
28 licensed under Section 1250 of the Health and Safety Code is inadmissible under this section.

we likewise conclude <u>Falsetta</u>'s analysis is applicable to section 1109 and, for the reasons explained in these cases, reject appellant's challenge to the statute.

As to remoteness of the earlier offenses,...Appellant's earlier offenses occurred within 10 years of the instant offense and subdivision (e) is not directly applicable. Appellant nevertheless contends the lapse of eight and one-half years between offenses was close to the 10-year mark, there were no intervening incidents to demonstrate a relationship with escalating violence, and the 2007 offense was much more spontaneous and far less serious than the 1999 offense. Appellant further contends the trial court abused its discretion by failing to conduct a section 352 [2] analysis of the remoteness and unique facts of the case, thereby abusing its discretion.

Under Evidence Code sections 1108 and 1009, due process is not offended when a trial court determines the probative value of propensity evidence outweighs its prejudicial effect and properly instructs the jury on the presumption of innocence and the prosecution's burden of proof. [Citation omitted.] Here, appellant submits the trial court failed to engage in a careful weighing of prejudice against probative value engendered by the facts of the case.

...

Under section 352, the court has the discretion to exclude relevant evidence if its probative value is outweighed by the probability that its admission will consume an undue amount of time or would create a substantial danger of undue prejudice, of confusing the issues or of misleading the jury. In the context of section 352, prejudice refers to evidence that uniquely tends to evoke an emotional bias against a party as an individual and only has slight probative value with regard to the issues. [Citation omitted.]

...

A careful review of the record in this case does not reveal an abuse of discretion in the trial court's admission of evidence of appellant's prior offenses. The likelihood of confusion was not great nor the time taken excessive. The evidence was presented in a clear manner and the handful of witnesses who offered the testimony did not confuse the issues of evidence. The prior offense was somewhat similar to the charged offenses, demonstrating defendant's propensity for acting out against cohabitants....

Appellant nevertheless insists the earlier offense was remote. In <u>People v. Harris</u>, (1998) 60 Cal.App.4th 727, the court identified four factors weighing in favor of exclusion under Evidence Code section 352–inflammatory nature of the evidence, probability of confusion, remoteness, and consumption of time–which should be balanced against the probative value of the evidence. (Id. At pp. 737-741). Generally speaking remoteness affects the weight of the evidence rather than its admissibility. The remoteness of evidence is a question for determination by the trial court and the court is clothed with wide discretion in this regard. [Citation omitted.] On appellate review of an Evidence Code section 352 ruling, the deferential abuse of discretion standard governs. [Citation omitted.] by that standard of review, the record in the instant case does not show an abuse of discretion, i.e., that the court's ruling was

---

[2] Cal. Evid. Code 352 provides as follows: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

1    arbitrary, whimsical, or capricious as a matter of law.

2    (LD 1, pp. 7-10).

3         Here, the Court finds nothing erroneous about the 5th DCA's analysis of the trial court's

4    application of California law.  <u>Oxborrow</u>, 877 F.2d at 1399.  Accordingly, Petitioner's claim fails on

5    its merits.

6         B.  <u>Admission of the Prior Conviction Under § 1101(b) Was Not Improper</u>.

7         Petitioner next contends that the admission of the 1999 conviction was error under California

8    Evidence Code § 1101(b), and resulted in a violation of California law and made the trial

9    "fundamentally unfair."  For several reasons, the Court rejects this contention.

10        First, the issue, as raised, again appears to be one of state law only and is not therefore

11   cognizable in federal habeas proceedings.  California Evidence Code § 1101(b) provides as follows:

12        Nothing in this section prohibits the admission of evidence that a person committed a
          crime, civil wrong, or other act when relevant to prove some fact (such as motive,
13        opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or
          accident, or whether a defendant to a prosecution for an unlawful sexual act or
14        attempted unlawful sexual act did not reasonably and in good faith believe that the
          victim consented) other than his or her disposition to commit such an act.
15

16        Petitioner does not identify any specific federal constitutional right that was denied to her as a

17   result of the state court adjudication of this issue. Instead, Petitioner contends that admission of the

18   evidence, in the absence of any qualifying exception under Evid. Code § 1101(b), resulted in a trial

19   that was "fundamentally unfair." (Doc. 13, p. 10).  Apart, however, from her contention that

20   admission of the 1999 conviction was highly prejudicial to her case, she does not explain how the

21   admission of such evidence made her trial "fundamentally unfair," nor does she identify any specific

22   federal constitutional guarantees that were violated by the trial court's decision.

23        Petitioner's broad assertion that her trial was "fundamentally unfair" does not transform this

24   claim into a federal one.  Merely placing a "due process" label on an alleged violation does not

25   entitle Petitioner to federal relief.  <u>Langford v. Day</u>, 110 F.3d 1386, 1388-89 (1996).  Broad,

26   conclusory allegations of unconstitutionality are insufficient to state a cognizable claim. <u>Jones v.</u>

27   <u>Gomez</u>, 66 F.3d 199, 205 (9th Cir.1995); <u>Greyson v. Kellam</u>, 937 F.2d 1409, 1412 (9th Cir.1991)

28   (bald assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary

1    hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999), *citing* Gray v. Netherland,

2    518 U.S. 152, 162-63 (1996) ("general appeals to broad constitutional principles, such as due

3    process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion). A

4    petitioner in federal court cannot merely characterize some state act as unconstitutional and expect

5    the court to explore all possible grounds under each article and amendment of the Constitution.

6    While courts should liberally interpret pro se pleadings with leniency and understanding, this should

7    not place on the reviewing court the entire onus of creating a federal claim for the petitioner.

8          In Ground Two, Petitioner raises only a state law claim, and, as discussed more fully in the

9    previous section, issues of state law are not cognizable on federal habeas review.

10         However, assuming, arguendo, that the Court could address state law claims, Petitioner has

11   failed to show that the state court improperly applied its own laws to Petitioner's case.   Under

12   California law, uncharged misconduct is admissible if the conduct is sufficiently similar to the

13   charged offense to support the inference that the defendant probably harbored the same intent in each

14   instance.  People v. Ewoldt, 867 P.2d 757, 7 Cal.4th 380, 402 (1994).  Petitioner's 1999 conviction

15   for stabbing a former boyfriend with a knife in their residence after the boyfriend had assaulted

16   Petitioner was similar in nature to the prosecution's depiction of Petitioner's knife assault on Battle

17   in this case.   Thus, it was clearly relevant to the issue of an absence of mistake or accident, which

18   was were critical issues in the trial given that Battle testified that the incident was an accident and

19   Petitioner told police she did not remember what happened.

20         This is the same conclusion reached by the 5th DCA, in reviewing the trial court's admission

21   of the 1999 conviction for abuse of discretion:

22         Appellant submits that specific intent and motive were not elements of either offense
           charged in the instant case.  Moreover, she contends there was no question as to the
23         identity of the person holding the knife that injured Battle nor was there a question
           about common plan or scheme.  Respondent concedes identity was not at issue here.
24         Nevertheless, respondent properly points out that evidence of the 1999 incident of
           domestic violence tended to show that appellant reacted in the same manner when
25         engaged in altercations with her cohabitants, thus tending to show the absence of a
           mistake or accident.  The trial court did not err in admitting the evidence under
26         section 1101, subdivision (b).

27   (LD 1, pp. 11-12).

28         Notwithstanding Petitioner's contention that "none of the exceptions are applicable in this

1   case," (Doc. 13, p. 10), the 5th DCA and the prosecution identified the specific exception that applies

2   under Cal. Evid. Code § 1101(b), i.e., absence of mistake or accident, an exception that is indeed

3   relevant in light of the evidence presented by the defense.  Accordingly, the Court does not conclude

4   that the state court improperly applied its own laws.

5        Finally, even assuming that Petitioner had properly alleged a violation of a federal

6   constitutional right, her claim would still fail.  The Ninth Circuit has upheld the admission of prior

7   crimes or bad acts where (1) there is sufficient proof that defendant committed the prior act; (2) the

8   prior act is not too remote in time, (3) the prior act is similar (if admitted to show intent); (4) the

9   prior act is used to prove a material element; and (5) the probative value is not substantially

10  outweighed by prejudice.  See Walters v. Maas, 45 F.3d at 1357-58 (upholding state admission of

11  prior on federal habeas review); see, also, United States v. Sneezer, 983 F.2d 920, 924 (9th Cir.

12  1992), *cert. denied*, 114 S.Ct. 113 (1993).

13       All of the above are present in this case.  First, the evidence of Petitioner's prior knife assault

14  on her previous boyfriend, Butler, was uncontroverted.  Indeed, Petitioner was convicted of that

15  charge and did not, at her trial, challenge the fact of her 1999 conviction for assaulting Battle.

16  Second, although Petitioner's prior conviction occurred in 1999 and the trial in this case took place

17  in 2008, both the trial court and the 5th DCA, as discussed above, concluded that admitting

18  propensity evidence from nine years earlier was not too remote.  Third, the two assaults are similar in

19  their salient characteristics: knife assaults on abusive boyfriends by Petitioner in a domestic setting

20  during or immediately after an argument.  Fourth, the 1999 conviction was admitted to establish lack

21  of mistake or accident, a material issue at trial in light of Petitioner's claim that she did not recall

22  what happened and Battle's contention that he "ran into" the knife held by Petitioner.  Moreover, as

23  discussed in the previous section, the 5th DCA conducted an extensive review of the trial court's

24  Evidence Code § 352 analysis before concluding that the trial court did not abuse its discretion in

25  ruling that the evidence was admissible and not unduly prejudicial.

26       Because the criteria set forth by the Ninth Circuit to establish a due process violation have

27  not been met, the Court concludes that the state court's admission of the 1999 conviction did not

28  render Petitioner's trial arbitrary or fundamentally unfair in violation of due process.  See Walters v.

1   <u>Maas</u>, 45 F.3d at 1357-58.   As such, the state court's decision is neither contrary to or an

2   unreasonable application of federal law and Petitioner is not entitled to relief on this claim.

3                                    **CONCLUSION**

4        Petitioner has failed to show that the state court's rejection of her two claims regarding the

5   admission of instances of prior conduct were contrary to or an unreasonable application of clearly

6   established federal law.   Accordingly, the Court will deny the petition and enter judgment in favor of

7   Respondent.

8        Moreover, the Court declines to issue a certificate of appealability.   A state prisoner seeking a

9   writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition,

10  and an appeal is only allowed in certain circumstances.   <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-336

11  (2003).   The controlling statute in determining whether to issue a certificate of appealability is 28

12  U.S.C. § 2253, which provides as follows:

13           (a) In a habeas corpus proceeding or a proceeding under section 2255 before a
             district judge, the final order shall be subject to review, on appeal, by the court
14           of appeals for the circuit in which the proceeding is held.
             (b) There shall be no right of appeal from a final order in a proceeding to test
15           the validity of a warrant to remove to another district or place for commitment
             or trial a person charged with a criminal offense against the United States, or
16           to test the validity of such person's detention pending removal proceedings.
             (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an
17           appeal may not be taken to the court of appeals from--
                 (A) the final order in a habeas corpus proceeding in which the detention
18               complained of arises out of process issued by a State court;  or
                 (B) the final order in a proceeding under section 2255.
19           (2) A certificate of appealability may issue under paragraph (1) only if the
             applicant has made a substantial showing of the denial of a constitutional
20           right.
             (3) The certificate of appealability under paragraph (1) shall indicate which
21           specific issue or issues satisfy the showing required by paragraph (2).

22       The Court may issue a certificate of appealability only when a petitioner makes a substantial

23  showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2).   To make a substantial

24  showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that

25  matter, agree that) the petition should have been resolved in a different manner or that the issues

26  presented were 'adequate to deserve encouragement to proceed further.'"   <u>Slack v. McDaniel</u>, 529

27  U.S. 473, 484 (2000) (*quoting* <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

28       In the present case, the Court finds that Petitioner has not made the required substantial

1  showing of the denial of a constitutional right to justify the issuance of a certificate of appealability.

2  Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal

3  habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.

4  Accordingly, the Court DECLINES to issue a certificate of appealability.

5                                              **ORDER**

6          For the foregoing reasons, the Court HEREBY ORDERS as follows:

7          1.  The petition for writ of habeas corpus (Doc. 1), is DENIED with prejudice;

8          2.  The Clerk of the Court is DIRECTED to enter judgment and close the file;

9          3.  The Court DECLINES to issue a certificate of appealability.

10

11  IT IS SO ORDERED.

12  Dated:  **May 13, 2011**                              **/s/ Jennifer L. Thurston**
                                                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28